UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY O. WHITE, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 12-0526-CV-W-ODS-P |
| IAN WALLACE, | ) |
| Respondent. | ) |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Timothy O. White, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on Mary 3, 2012, seeking to challenge his 2008 convictions and sentences for first degree burglary and stealing, which were entered in the Circuit Court of Boone County, Missouri.

The petition raises four grounds for relief: (1) that petitioner was denied due process when the state withheld exculpatory evidence; (2) that trial counsel was ineffective for failing to move to strike juror number 7 for cause; (3) that trial counsel was ineffective for failing to object and to request a continuance or a mistrial; and (4) that trial counsel was ineffective for failing to object and request a mistrial when the state engaged in misconduct. Respondent contends that grounds 1, 2, and parts of 3 are procedurally defaulted, and the remaining part of ground 3 and ground 4 are without merit.

**SUMMARY OF THE FACTS**

On appeal from the denial of petitioner's Missouri Supreme Court Rule 29.15 post-conviction relief motion, the Missouri Court of Appeals summarized the facts as follows:

> One morning, Ms. Caroline Kuby woke up to a noise in her bedroom. She saw a man in a dark-colored hat and shirt picking something up from the floor. After seeing his face, she yelled at him to leave. He ran from the room and down the stairs. Her boyfriend, Mr. Robert Hatley, jumped out of the bed and ran after the man.
>
> Mr. Hatley called 911 and continued to pursue the man outside the

residence. He encountered Mr. Chris Kespohl who had seen a man in dark clothes speed walking or slow jogging toward the bus station. Mr. Hatley told the 911 dispatcher that the man was headed to the bus station. The dispatcher instructed Mr. Hatley to return the residence [sic] and speak with the police at the scene. At the residence, Mr. Hatley realized that his wallet was missing.

A bus driver noticed a man in dark-colored clothing running across the parking lot. She told him it would be another five to ten minutes before she left, and allowed him to wait on the bus. After he paid the fare and sat in the back, she exited the bus to smoke a cigarette. The police pulled in front of the bus and asked if she had someone on the bus. The officer began describing the intruder and the driver simultaneously provided a matching description of her customer.

Officer Emil Porter arrived on the scene and found [petitioner] handcuffed sitting on the bus. Officer Porter removed [petitioner] from the bus to see if Ms. Kuby, Mr. Hatley, and Mr. Kespohl could identify him as the man seen in the house and on the street. They identified [petitioner] as the same man. A search of the bus revealed Mr. Hatley's wallet lying in an area in front of the seat where [petitioner] had been sitting. A search of [petitioner's] pockets revealed a single key, which Ms. Kuby identified as her spare key that had been in her mailbox. The State's theory was that [petitioner] had used the key to gain unlawful entry. [Petitioner] also had a silver ring in his pocket, which belonged to Ms. Kuby's roommate.

[Petitioner] testified at trial that the day before the incident he had found a ripped-open envelope that contained checks and keys. He claimed that he went to Ms. Kuby's home to return the items. He further testified that the front door was unlocked and the residence appeared to be a rooming house where people rented rooms. He went up to the room where Ms. Kuby was sleeping and knocked on the bedroom door. He entered and tried to explain his presence, but Ms. Kuby yelled at him to leave. He left the residence, walked in his normal fast pace to the bus station, and on his way picked up Mr. Hatley's wallet, which he found lying in the street. He claimed he told the bus driver about finding the wallet and placed it on a console in the front of the bus.

On cross-examination, [petitioner] claimed the single key was his house key and provided no explanation for the ring. The prosecutor asked him twice if Ms. Kuby was a liar, each time he answered that the key belonged to him. The prosecutor also asked him why the checks were not in evidence if they were in his wallet on the day of the crime. [Petitioner] told the prosecutor that he did not give the police the checks because he had a right to remain silent. After his testimony, a recording of the conversation between Ms. Kuby's father and [petitioner] that occurred on the afternoon of the incident date was played for the jury. In the call, [petitioner] told Mr. Kuby that his daughter misunderstood [petitioner's]

> presence in her bedroom and that he was trying to return checks; [petitioner] offered to return the checks if Mr. Kuby would ask the prosecutor to drop the charges.
>
> During closing arguments, the prosecutor stated, "I witnessed the Defendant, Mr. White, listening to that call this morning, so he matched his story up pretty good, within hours of what he was going to tell you."
>
> The jury convicted [petitioner] of both charges. We affirmed the conviction and sentences. *State v. White*, 286 S.W.3d 868 (Mo. App. W.D. 2009). Subsequently, [petitioner] filed a *pro se* post-conviction relief motion under Rule 29.15. Appointed post-conviction relief counsel filed an amended motion, claiming ineffective assistance of trial counsel and attaching some of the *pro se* claims. [Petitioner] and trial counsel testified at an evidentiary hearing. The motion court denied relief.

(Doc. No. 1, Ex. 3, pp. 24-27).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUNDS 1, 2, AND PARTS OF 3

In ground 1, petitioner contends that the state withheld exculpatory evidence from petitioner's trial attorney for two years, depriving petitioner of due process. In ground 2, petitioner contends that trial counsel was ineffective for failing to move to strike juror number 7 for cause. In parts of ground 3,

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

petitioner contends that trial counsel was ineffective for failing to object to the state's untimely disclosure of the audio recording of May 13, 2006, and request a continuance, and for failing to object to nondisclosure of similar recordings. Respondent correctly contends that grounds 1, 2, and parts of 3 are procedurally defaulted.

> In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:
>
>> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that, although petitioner presented the claims at issue in his amended Rule 29.15 motion, petitioner did not raise them on appeal from the denial of his motion. Therefore, those claims are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why this ground was not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default.[2] As a result, we do not consider prejudice. The Court, however, can still reach the merits of his

---

[2] The recent holding by the Supreme Court of the United States in Martinez v. Ryan, 132 S. Ct. 1309 (2012) does not apply to petitioner's case because petitioner's claims in grounds 1, 2, and parts of 3 were reviewed on the merits by the post-conviction motion court.

claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 1, 2, and parts of 3. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 1, 2, and parts of 3 is barred.

Grounds 1, 2, and parts of 3 are denied.

## REMAINING PART OF GROUND 3 AND GROUND 4

In the remaining part of ground 3, petitioner contends that counsel was ineffective for failing to object to the state's improper comments during closing arguments and to request a mistrial. In ground 4, petitioner contends that trial counsel was ineffective for failing to object and request a mistrial when the state engaged in misconduct by repeatedly asking petitioner if alleged victim Caroline Kuby was a liar. In order to succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonably probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> In his first point, [petitioner] argues that counsel's failure to object to the improper cross-examination was not reasonable trial strategy because the case hinged on his credibility versus that of Ms. Kuby. He further argues that an objection would have caused the jury to have a reasonable doubt about the State's evidence, and thus, a reasonable probability exists that a jury would have acquitted him. We disagree.
>
> On this claim, the motion court determined that the prosecutor's question of whether the victim was a liar warranted an objection. However, the motion court did not find trial counsel ineffective for failing to object because it determined that the failure to object was the product of sound trial strategy. Trial counsel testified during the post-conviction hearing that he chose not to object because [petitioner] was handling his testimony well and the jury appeared to believe him. Moreover, the motion court found that even if counsel's failure to object was not the product of reasonable trial strategy, [petitioner] could not prevail on the claim because he failed to show prejudice. The motion court found that the evidence substantiating [petitioner's] guilt was so substantial that the "prosecutor's improper inquiries [did not] affect the outcome of the case."
>
> Ineffectiveness is not demonstrated even when counsel failed to make a meritorious objection, assuming it was based on sound trial strategy, as long as the admission of the objectionable evidence did not deprive a defendant of a fair trial. [*Harrison*, 301 S.W.3d] at 538-39. First, this case was not a case of [petitioner's] testimony versus Ms. Kuby's. Mr. Hatley was also a victim and identified [petitioner] as the intruder. Two other witnesses corroborated his story. Additionally, [petitioner] had Mr. Hatley's wallet on the bus with him along with the roommate's ring in his pocket.
>
> Second, the evidence adduced by the improper questions was [petitioner's] restated answers to the prosecutor's proper question of whether the key in his possession was the key from Ms. Kuby's mailbox. *See Harrison*, 301 S.W.3d at 539. His responses did not prejudice him because they constituted his defense that he did not use the spare key to gain entry into the home. Thus, had there been a motion to strike the answers, no reasonable probability exists that the jury would have acquitted him because his prior answers would have remained in evidence. Accordingly, the motion court did not clearly err in finding against ineffective assistance of counsel based on trial counsel's failure to object to the alleged improper questioning. [Petitioner's] first point is denied.

In his second point, [petitioner] argues that counsel's failure to object to the improper argument was not sound trial strategy because the prosecutor's statement suggested to the jury that she possessed special knowledge of [petitioner's] guilt. Specifically, [petitioner] claims the prosecutor's improper statement suggested to the jury that [petitioner] fabricated his testimony. [Petitioner] further argues that he was thereby prejudiced because the jury was allowed to consider the improper argument in finding him guilty. Again, we disagree.

On this claim, the motion court determined that an objection to the prosecutor's statement would have been meritorious because she argued facts outside of the record and made a "personal assessment of [petitioner's] testimony." However, the motion court did not find trial counsel ineffective for failing to object. The motion court determined that for counsel's failure to object to the prosecutor's statement to constitute ineffective assistance, [petitioner] was required to also show that the failure to object substantially deprived him of a fair trial. The motion court concluded that [petitioner] failed to show that the prosecutor's "comments were *so influential* that the jury convicted him when they otherwise would not have" because the evidence against him was overwhelming. The motion court also concluded that [petitioner] failed to show counsel was unreasonable in failing to ask for a curative instruction or mistrial because trial counsel testified during the post-conviction hearing that he did not do so because he felt such action would highlight the damaging statement.

A prosecutor is allowed to suggest that a defendant fabricated his testimony based on the evidence in the case. *See, e.g., State v. Underwood*, 642 S.W.2d 658 (Mo. App. E.D. 1982) (finding prosecutor's argument that defendant testified at the end to "work his testimony around the other witnesses" was proper commentary on witness credibility). Here, the jury did not know that [petitioner] had listened to the tape prior to his testimony because neither the prosecutor nor the trial counsel asked him if he had done so and the tape was played after [petitioner] testified. Thus, the prosecutor's comment was an argument based on facts not in evidence, which is impermissible. *See State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995). The motion court was correct in finding that the prosecutor's comment warranted an objection and a request for a curative instruction. Trial counsel's failure to object to an improper closing argument constitutes ineffective assistance when such failure deprives the defendant of a fair trial. *Mitchem v. State*, 250 S.W.3d 749, 755 (Mo. App. W.D. 2008). However, because the evidence against [petitioner] was overwhelming, [petitioner] cannot show that a reasonable probability exists that but for trial counsel's error, he would have received a different outcome. *See Harrison*, 301 S.W.3d at 540.

> Moreover, [petitioner's] version of the events was inconsistent and incomplete, unlike the victims' stories. For example, [petitioner] claimed that he was in the victim's home to return the checks, but the police did not find any checks near or on his person. He stated in the recorded conversation with Mr. Kuby that the checks were stashed in a personal place, but at trial said they were in his wallet. [Petitioner] claimed that he told the bus driver about finding a wallet on the street and that he placed it on the console in the front of the bus, but Mr. Hatley's wallet was found next to [petitioner] in the back of the bus. Additionally, the bus driver did not testify that [petitioner] told her about a wallet before he walked to the back of the bus. Further, [petitioner] had the roommate's silver ring in his pocket, and did not explain why he had it although the prosecutor asked. Thus, even if the jury believed [petitioner's] story was not recently fabricated, a reasonable probability does not exist that a different outcome would have resulted because his story was improbable.
>
> Therefore, the motion court did not clearly err in rejecting [petitioner's] claim of ineffective assistance for trial counsel's failure to object to the improper argument. Accordingly, we deny [petitioner's] second point.

(Doc. No. 1, Ex. 3, pp. 28-33).

The resolution of ground 4 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[3] Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

The remaining part of ground 3 and ground 4 are denied.

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." <u>Tennard v. Dretke</u>, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. <u>See</u> 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

     /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: <u>May 6, 2013.</u>